IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHYLLIS HILL, et. al., | : | No. 4:CV 01-744 |
| | : | |
| Plaintiffs | : | Judge Jones |
| | : | |
| v. | : | |
| | : | |
| CITY OF SCRANTON and | : | |
| JAMES P. CONNORS, Individually | : | |
| and as Mayor, City of Scranton | : | |
| Defendants | : | |

## MEMORANDUM AND ORDER

### February 21, 2006

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is a Motion for Recusal ("the Motion")(doc. 233) filed by Plaintiff's counsel, Cynthia L. Pollick, Esq. on February 1, 2005. Pursuant to Order of this Court (doc. 231) dated February 3, 2006, we directed Ms. Pollick to brief the Motion. We received a brief in support of the Motion on February 21, 2005. (Rec. Doc. 241).

For the following reasons, we will deny the Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**:

The above-captioned matter was initially filed individually as three separate actions by the three Plaintiffs, Phyllis Hill, Donald Hickey and Paul W. Graham

1

(collectively "Plaintiffs"). Accordingly, at the initial filing, each matter was designated to a different docket number. On July 10, 2001, the three cases were consolidated into one case and assigned a docket number, 4:01-cv-00744, to represent the new, consolidated case. The Plaintiffs' individual cases, along with their respective docket numbers, were extinguished when the cases were consolidated into the above-captioned case.

Although the cases had been consolidated and all prior docket numbers had thus been extinguished, counsel for all three Plaintiffs, Ms. Pollick, continued to file motions to an extinguished docket number 4:01-cv-00653. On July 15, 2002, Ms. Pollick filed a Motion for Summary Judgment to the extinguished docket number and thereafter on September 7, 2005, she filed a Motion to Stay to the same extinguished docket number. On September 8, 2005, Ms. Pollick and counsel for the Defendants participated in a conference call with this Court, wherein Ms. Pollick was directed by us not to file any future documents or motions to the extinguished 4:01-cv-00653, as that number no longer existed relevant to the instant action.

After this cautionary instruction, on January 30, 2006, Ms. Pollick filed a Motion to Stay Action (doc. 228), with both the above-referenced extinguished docket number and the appropriate docket number on the caption. On that same

date, Ms. Pollick filed a Motion for Individual Jury Trials for Each Plaintiff Since They Only Agreed to Consolidate the Cases for Pretrial Issues. (Rec. Doc. 229). Thereafter, on February 1, 2006 we issued an Order (doc. 231) dismissing the said Motion as improper because as we have time and again advised Ms. Pollick the cases were *not* consolidated only for pretrial purposes, despite her belief in this regard, and directing Ms. Pollick to file a motion to sever in order to seek her requested relief. Also in the February 1, 2006 Order (doc. 231) we once again cautioned Ms. Pollick to stop referencing the extinguished docket number 4:01-cv-00653 on her filings, or face a *sua sponte* sanction from the Court.

Prior to the instant case, the action of *Gnall v. City of Scranton,* 3:02-cv-00861 was brought before this Court. The claim in *Gnall* is similar to the instant action, largely involving the City of Scranton's residency requirement for its employees. Ms. Pollick alleges in the Motion that a lack of impartiality is present in the case at bar because the Court has previously ruled that Plaintiff Hickey did not make out a due process claim (doc. 90), but found that such a claim *did* exist in *Gnall.* Ms. Pollick alleges that these two rulings are inconsistent and raise a suspicion of bias on the part of the Court against Ms. Pollick and the Plaintiffs.

Prior to the instant action, Ms. Pollick appeared before this Court as attorney for the plaintiff in *Scott v. Tully, et. al*, 3:02-cv-00805. Ms. Pollick further alleges

that the Court "threatened" her with the sanction of a directed verdict during the course of that trial, and that this too presumably demonstrates personal animus against her to a degree that indicates a lack of impartiality by the Court.

At bottom, Ms. Pollick's submissions argue that because we have in her view, been "mean" to her, we should now depart the case sub judice, as well as presumably any other case in which she is involved that lands on our docket.

**STANDARD OF REVIEW:**

In pertinent part, 28 U.S.C. § 455 provides:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party . . .

Id.

When evaluating a motion for recusal pursuant to §455, "what matters is not the reality of bias but its appearance." Liteky v. United States, 510 U.S. 540, 548 (1994). The court must use an objective standard, and must require recusal when a "reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir.

1987)(citing United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir. 1983)); see also In re Antar, 71 F.3d 97, 101 (3d Cir. 1995). Moreover, when deciding a recusal motion brought under §455, the court "need not accept the Movant's factual allegations as true . . . Instead, the presiding judge may contradict the Movant's factual allegations with facts derived from the judge's knowledge and the record." Cooney v. Booth, 262 F. Supp. 2d 494, 504-505 (E.D. Pa. 2003); see also United States v. Sciarra, 851 F.2d 621, 625 n. 12 (3d Cir. 1988).

**DISCUSSION**:

Ms. Pollick alleges that this Court "threatened" her with *sua sponte* sanctioning in its February 1, 2006 Order. We do not, and are not required to, accept Ms. Pollick's interpretation of this Court's February 1, 2006 Order as indicating a negative bias towards her. Clearly, upon reading the subject Order, it is apparent that the Court was not "threatening" Ms. Pollick, but rather giving her a clear directive that her failure to comply with our instructions not to reference the extinguished docket numbers on the caption would potentially result in sanctions.

It is important to examine the Court's admonition in the context of the record in this case. A review of that record, including the relevant docket sheets, indicates that Ms. Pollick has on at least *three* occasions overtly disregarded the Court's instructions and filed documents with extinguished docket numbers.

Therefore, it was not extraordinary in the least for us to issue an order alerting Ms. Pollick to the consequences of any future insubordinate acts committed by her before this Court. Indeed, our February 1, 2006 Order is more an expression of this Court's absolute frustration and exasperation as triggered by Ms. Pollick's repeated refusal and/or inability to follow our prior directives. It is firmly this Court's opinion that a "reasonable man knowing all the circumstances" would not harbor doubts about this Court's impartiality, but would note that our directives to Ms. Pollick were necessary and proper in order to encourage her compliance with the procedures of this Court.

Further and as noted, Ms. Pollick alleges that since the complaints in this matter and *Gnall* were identical, a suspicion of bias against Plaintiffs and their counsel arises because the Court found that Gnall alleged a due process claim, but found that Plaintiff Hickey did not make out such a claim. This reasoning is both specious and illogical. A review of both dockets clearly shows that the documents and briefs supporting the motions for summary judgments in the respective actions are not identical, nor are the underlying facts. While we feel little obligation to justify the differing results in these cases, we will note that Gnall survived a summary judgment motion on his due process claim because there were *bona fide* issues of material fact. In the instant action, Plaintiff Hickey's due process claim

was raised *for the first time* in his reply brief (doc. 89) to the summary judgment motion filed by Defendants. Despite this and in the interest of justice, we construed Plaintiff Hickey's argument in the reply brief as a motion to amend the complaint, and accordingly gave the parties leave to brief the thus construed motion to amend. Following the said briefing, we determined that the facts alleged by Plaintiff Hickey could not support a due process claim. The *Gnall* facts were distinct from those alleged by Plaintiff Hickey. In light of the clear fact that there was no disparate treatment of these two cases, no suspicion of bias against Plaintiffs or their counsel is justified, and indeed non exists.

With respect to Ms. Pollick's allegations regarding "threats" made to her by this Court in *Scott v. Tully,* a review of the trial transcript (3:02-cv-00805, docs. 248-252) clearly indicates that the subject warning made by us to Ms. Pollick was not unfounded. Once again, our actions must be viewed in context. In that case we cautioned Ms. Pollick that if, in her closing statement, she again referenced a claim that we had already dismissed, then the Court might be forced to enter a directed verdict against her client. This caution to Ms. Pollick was in the face of her repeated refusal, during that trial, to accept rulings by the Court regarding dismissed claims. Our warning was further prompted by statements by Ms. Pollick indicating that she intended to revisit these previously dismissed claims with the

jury, and our fear was that this would cause both confusion and prejudice.

**CONCLUSION**:

We do not dispute Ms. Pollick's allegations that this Court has admonished her on several occasions. However, all of the admonitions were made in chambers or at sidebar and Ms. Pollick was *never* impugned before a jury. Moreover, any admonitions or express warnings made to Ms. Pollick were given only after repeated reminders by this Court went unheeded. At every turn, we have allowed Ms. Pollick to make appropriate legal arguments on behalf of her clients. Some of these arguments have resulted in adverse rulings which we will again note were based on the facts as we found them and the applicable law, but certainly not as the result of a personal bias. We will note that Ms. Pollick has frequently evidenced a confounding tendency to re-argue or even disregard points that have been previously disposed of by the Court. Ms. Pollick misperceives her role as an advocate when she does so. All attorneys will on occasion suffer adverse rulings before a tribunal. The true professional will soldier on and not endeavor to repeatedly revisit prior rulings or wholly disregard a court's instructions.

It is always this Court's goal to encourage a collegial atmosphere among the lawyers who appear before us. We have noted that Ms. Pollick's interpersonal difficulties extend not only to this Court but are also evident in her dealings with

opposing counsel in every case she has participated in before us.  We fully accept Ms. Pollick's assertion that she has to be a "zealous advocate for her clients," but she has a concomitant responsibility to respect this tribunal and to deal in a professional manner with opposing counsel.   To do otherwise takes the practice of law, which is entirely stressful under normal circumstances, and makes it unbearable for all involved.  We reiterate that the Court harbors no personal animus whatsoever towards Ms. Pollick and indeed we have never imposed any manner of sanctions against her despite our warnings.  Ms. Pollick entirely misreads the Court's rulings and actions to indicate such animus.  On the contrary, Ms. Pollick's demeanor with the Court in chambers, at trial, and at sidebar bespeaks at least a borderline contempt for the authority of this Court and at times a total disrespect for our rulings. In the face of this, we can conceive of no other alternative available to us than to expressly warn Ms. Pollick that continued behavior of this nature may result in an appropriate sanction.

Finally, we will make an observation about an area that to this point has likely been lost upon Ms. Pollick.  All judges were of course once practicing lawyers, and indeed we enjoyed a career as an attorney of some twenty-two years prior to arriving at this station.  As a young lawyer, we fancied ourself as an exceedingly zealous advocate, not unlike how Ms. Pollick apparently likes to view

9

herself.  However, we recall that on numerous occasions as an attorney we suffered adverse rulings and comments by judges which were at times most difficult to accept.  Upon further reflection we generally recognized that these rulings were as the result of objective calls by tribunals that happened not to be in our favor.  We thus resisted the impulse to believe that an adverse ruling or warning necessarily indicated a judge's bias or personal animus against us.  We admire Ms. Pollick for her willingness to litigate difficult cases, and we believe that her heart is in the right place as it compels her to argue with conviction.  We simply wish that she would endeavor to be more appropriate in her interactions with this Court, since doing so would immeasurably enhance her advocacy skills, and thus serve her clients better.

Therefore, for the foregoing reasons, the Motion (doc. 233) will be denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion (doc. 233) is DENIED.

s/ John E. Jones III<br>
John E. Jones III<br>
United States District Judge